Good morning, and may it please the Court. I'm Joseph Wiseman, counsel for Appellant Mr. Johnston in this matter. And, Your Honors, I'd like to reserve five minutes for a rebuttal, if I may. All right. You can watch the clock down there, but I'll also try to help you out. Thank you, Your Honor. What I'd like to do with respect to the arguments this morning is to focus in order of the superseding indictment. So I'd like to address count one first, count two, three, and four, and then go to the sentencing issue, and I would submit the motion to suppress and the arguments thereon, unless Your Honor has any questions regarding that. With respect to count one, as the Court knows, Mr. Johnston was convicted of conspiring to produce child pornography. The problem, as I see it with that case, is that if one looks at the facts that were developed in the trial court, although there were extensive chats between Mr. Johnston and this individual in the Philippines by the name of or by the moniker of Switlass, I think it was, when Switlass actually sent the CDs with the photographs, it turns out that those photographs were produced seven months or so prior to the agreement. But why couldn't they have agreed to produce pornography later, even though she sent that CD with earlier pictures? Couldn't they have had a plan to make more photographs later? Indeed, they could. And, Your Honor, as the Court knows, there's not a requirement for an overt act, as I understand the law with respect to this area, that to consummate a conspiracy. But and I'm not doubting the fact that Mr. Johnston had the intent, as was described in the chats. However, I believe the best proof of what the person in the Philippines, a Switlass individual, intended to do is the date of those photographs in the CD they were actually received. And so it seems to me you don't have in this particular case under the facts that were before the trial court and the jury, you don't have the meeting of the minds that Morrison requires under U.S. Supreme Court doctrine, because. Sotomayor, let me ask you, I think that this echoes somewhat the argument that was made to the jury, this one-way agreement. Correct. So in light of the facts and in light of the standard of review, why couldn't a jury have just concluded the opposite? I mean, it's a fair argument, but it wasn't a winning argument in front of the jury based on the evidence. So what is it here that would cause us to upend the verdict on that point? Well, Your Honor, this is under Rule 29, because the defendants did seek a Rule 29. So the question becomes, in looking at the evidence in the light most favorable to the government, could any reasonable jury come to that conclusion? I would argue, based upon the facts of the case, that it was that the jury got it wrong and that this Court should overturn, although it's a very high standard to meet, the jury's decision in that. And, yes, the argument was made by defense counsel to the jury, but in light of the fact that these the actual evidence that was before the jury, that CD that had those photographs, it's uncontroverted that they were. And so, Your Honor, if the jury had an intent to take more pictures, why couldn't the jury decide that that meant she had an intent to take more pictures? Well, again, Your Honor, it goes to the point of what was actually delivered. What I'm focusing on is when that CD, because the CD arrives two days after the May 27th, I believe, transfer of the money. So she presumably gets the camera and presumably produces the CDs and presumably sends the CDs to Mr. Johnson. But when one looks at the CD, there are photographs that are seven months old. So my argument is, based upon the chats, and again, I'm not disputing Mr. Johnson's intent, but it seems to me that when she produces something that's old, relatively speaking, to the timeframe of the alleged conspiracy, that it suggests her intent, and her intent, in my view, was not to consummate an agreement. Well, but I guess, do we even need to look at the dates? I mean, she was sending various forms of child pornography to your client. That is correct. All right. And then he asked her if she would please purchase a camera and he would buy her money so she could produce more. She said she would. The fact, just the mere fact that she had been sending him various forms of child pornography, I guess, undercut the fact that they had an agreement. Well, Your Honor, my view about that is that the indictment and the evidence that was before the jury in which the government presented was the agreement beginning in May 25, 2006, which was the date of the alleged agreement, which was the chats. What happened beforehand, again, may go to Mr. Johnson's intent, but the fact that the CD was produced with old photos, in spite of the fact that Mr. Johnson said that he would send money for a camera, rather, to produce additional photos, what was produced was, in my view, before the agreement took place. So it, in my view, belies the intent of the other side, in other words, the individual in the Philippines. Notwithstanding the fact that there had been previous submissions or transfers of child pornography, I agree, I accept that as a record, but for purposes of the count of conspiracy, when the government says the agreement was the 25th of May and he receives a CD with photographs that are 7 months old, I think that belies the notion of the meeting of the minds. Do you want to move on to your multiplicities? Yes. With respect to count 2, 3, and 4, as the Court knows, count 2, 3, and 4, as I said, count 2 and count 3 dealt with the receipt of the child pornography, and count 4 was the possession. The problem, as we articulate in the brief that I see with that, is that it's multiplicitous in the sense that the possession count of count 4 is a lesser-included offense of the receipt. The government went to great length to delineate the dates of the receipt of the child as to how the jury was to determine possession. So I think just based upon what's before the jury and what's in the record, you have a problem with multiplicity. You have a the possession just being a lesser-included, and I don't think the jury was the government did, in my view, didn't do a good job of explaining to the jury and let the jury determine that they were separate charges. For example, count 2, which was the receipt of the child pornography, which was, as the Court may recall, the movie download into Mr. Johnson's hard drive, the government proves or in the indictment states that occurs between February 10th, 06, and March 4th of 06. With respect to count 3, that's the receipt of the child porn, which was the receipt of the separate CD-ROM from FedEx, and FedEx sent it to Mr. Johnson. And that occurs from May 26, 06, to August 19, 2006. That's the temporal time limit of count 3. Yet if in excerpts of record 3, we reproduce the verdict, the jury's verdict form, and there is no indication that any time reference to the possession. It just says, do you find him guilty of possession, and the jury said yes. Sotomayor, what is your position on whether our analysis should be limited to the jury instructions and the verdict form as opposed to the closing argument? Well, the — I think the Court can and should consider all three, insofar as that in the closing argument, the government is, if I recall, it does not make it very clear as to what the government's view of the evidence. And as a matter of fact, in the closing argument, I think the defense even was confused, because the defense talked about count 2 and count 3, or rather, count 4 being a lesser included offense of count 2 or count 3. And so I don't believe that the — Well, you think that wasn't confused, right? Don't you think that that's correct? That that's your argument about why it's duplicitous? That's indeed my argument, Your Honor. That's the argument perhaps counsel was attempting to make. But when one looks at the jury verdict, I think the jury was unclear as to what was happening, and if one just parses the timeframes and what was said. Now, I certainly understand under — under case law, under Davenport and Overton, that one can be convicted of two separate counts of receipt if they're different mediums. And I'm not — I'm not contesting that issue, because there were different mediums. It was the CD versus the actual downloads. But when he's charged with — with possession, that's — that is subsumed, in my view, by the two receipt counts. Well, he's — the defense counsel said in closing argument, I think with respect to the confusion as to what was what, said something to the effect that count 3 has nothing to do with the videos. It has to do with the images, which I think is what is referred to as the e-mails also. There's sort of three things that are mixed up in the arguments, correct? I think you're right. And I think not only is there a mix-up with the argument by the defense, but I think that the government did not do, at trial, did not do a solid job of establishing that it was in fact the e-mails with the attachments that were part of one of the receipt counts. I know the government makes the argument in their briefs that in fact, I think count 3 had to do with the actual e-mails. But my recollection of the record, Your Honors, is that at trial, there was not evidence or there was not an argument made that it was in fact the e-mails that supported that receipt count, that it was merely the download of the movies, on one hand, the receipt of the CD, on the other hand, that gave rise to the — to count 2 and count 3. So it is a bit much. Isn't the download the same as the e-mail? I mean, it's not clear. I think the record is unclear about that. I was under the assumption, Your Honor, that when I was operating under the assumption that the download was the actual download of some video from some website as opposed to an attachment to an e-mail, and then one opens the e-mail. That's what I think the record is. Do you want to save the remaining time? Well, I think I have three more minutes, and then I have my five minutes on the button. No. You have — that's your total time. That's my time, and I will — I will reserve the 3 minutes and 44 seconds for the button. All right. Thank you. Good morning. May it please the Court. I'm Heiko Coppola on behalf of the United States. Good morning. Why don't we start with the first argument that your counsel here, opposing counsel, started with? And I guess I'd like to ask you, he asked us to focus on the date that the agreement was made and to look at what had happened before that time. Can you respond as to why that is something we shouldn't consider in terms of whether or not an agreement should be made and whether or not there really was sufficient evidence to show an agreement other than maybe a unilateral one? I think the — I think if we focus too much on the date, we then don't focus on properly what the evidence before the court was or before the jury was at that period — during that period of time. And the evidence of conspiracy in this case and the evidence of the agreement, Your Honors, was clear. The defendant requested photographs of 12- to 15-year-old virgins. This lax in character agreed to provide them if he would pay for a digital camera. The defendant at one point says, We're partners. Laxon indicates, Yeah, sure, and I will make you happy. The defendant then sends the $350 for the photo — for this lax in individual to purchase the camera. And then we have yet still more conversation after he sent that $350 where Laxon says — goes even further and says, Not only did I get the digital camera, but I rented a hotel room and I took the photos. And it was at that — it was after that point — it was after that conversation then that the disc with the photographs, as I recall the record, then shows up in Mr. Johnson's mail via FedEx or one of these overnight characters. So does the date on the photographs matter? No, Your Honor, it doesn't. There is no overt act that's required. But you argued that, didn't you, at the trial, trying to figure out, then, if it didn't matter, why — or I think in your brief, why do you put so much emphasis on that the jury probably thought that it was — we can't be sure that the date was accurately set? That was simply in response, Your Honor, to what defense counsel's argument was with respect to this. Right, but why didn't you say the date doesn't really matter? Well, it doesn't, Your Honor. But I felt compelled to respond to the argument in some. And the evidence is not nearly as clear as defense counsel would like it to be with respect to the date when those photographs were taken. In fact, the testimony of Agent Cardwell was that he could not say with any certainty when those photographs were produced. And as this Court, as I believe it was Your Honor pointed out, not only was that argued to the jury below, but the jury, it was entitled to disregard that argument entirely, and that's what they did in this case. If I could ask you about the multiplicitous point here, the issue. Why are we in this position today? Why are we having to guess and see and did it conform? You have the power and the ability to have charged a number, it looks like, of counts here, and even if you chose not to charge a number of counts, to correctly and helpfully identify, if not for us, for the jury, what related to what count? I'm just dumbfounded. And Davenport had already been decided at the time of this trial. Can you answer that? Your Honor, not having tried the case, I can't answer what was going through the heads of the prosecutors who were trying it. But I can say that the evidence, as I reviewed the transcript in this, certainly suggests that the trying AUSA attempted to delineate as well as possible. Well, when you say as well as possible, sorry. We know exactly what he might have wanted to do, but he didn't appear to do it. And number one, it won't make any difference in the sentencing, will it? It will not, Your Honor. Okay. It has only with respect to collateral consequences. That's correct, Your Honor. So why is the government fighting this so hard? The government's view is that it was not multiplicitous, Your Honor, and to that extent they were trying to delineate. But I read your brief as actually basically conceding that counts 2 and 4 were, but then still saying that we should somehow not reverse either count. I'm sorry if I gave that impression, Your Honor. I mean, don't you admit that both involved the hard drive? That count 2 was receipt of the hard drive and then with the downloaded videos under the hard drive, and then count 4 was possession of those videos on the hard drive? Possession of it. There were a number of images on the hard drive beyond the videos as well. So, but Overton stands for the proposition that you can have downloads and then you can also have storage and that not, that is not then multiplicitous. But you have to specify that. I mean, it doesn't, it's not really clear. I mean, count 2 says between on or about February 10th, 2006 and on or about March 4th, 2006. Looks like the testimony of the evidence was about 300 videos downloaded between these dates from these websites. On count 3, you have between May 26, 2006 and or about August 19th, 2006. And here it looks like the evidence was, or the testimony was at least four emails with child pornography images attached, sent to Johnson between these dates. And then I guess a CD containing images of the same minors also sent by FedEx, is that correct? That's correct, Your Honor. All right. And now we're at count four. And the indictment says Johnson did knowingly possess one or more matters to it, one Seagate 160 gigabyte hard drive serial number. And it says it removed from the Dell Dimension desktop, then another serial number. Seed from the 1002 Dumbarton Circle, Sacramento, California on September 6th. It says, which contained visual depictions of minors engaged in sexually explicit conduct. How do we know that's a different media form or that it's any different from what was charged in count two? I would agree that the language is not as clear. But I think we need to look to what Mr. Reardon was arguing at the time, during closing argument. And he did- That makes it even more confusing to me, because I looked at the closing argument. And he's referencing the CDs, but not the emails to which there's the attachment. Which seemed to me to really sink the ship, because the jury would have no idea of the difference. Since we just talked about, there's supposed to be a difference between the email downloads and the CD, or the hard drive. So maybe I'm not looking at the right place in the transcript, and you can point me to somewhere else in the transcript I should look. At least with respect to count two, Your Honor, Mr. Reardon did do, did focus on the downloads, at least with respect to that. Count three- What reference? That would be in, there are two places that I can point the court to. In the government supplemental excerpts of record four, between pages 170 and 191, and then also, the government supplemental excerpt of record seven, page 298 through 301. So that at least is with respect to count two. Now, certainly with respect to count three, the evidence in the record at trial was that there were these emails with the downloads, the four emails with the downloads. And then there was some commentary about the CD also then being sent. But with respect to count three, it's not as clear in the closing argument, but the evidence in the record that the government relies on was that supplemental excerpts of record four between pages 222 and 272. But I'd also point out too, at least as we're looking at the multiplicitous argument, the jury, in fact, had the special verdict form in front of them and made findings based on those dates. How does that help you? How does the staff? I mean, it's interesting because you had the power, again, to form a verdict form that could have perhaps helped you here. How does the special verdict form help you here? Because the data, it focuses the jury more aptly on the evidence during those periods of time, Your Honor. But in what sense was this even a special verdict form? The verdict form doesn't say the medium. It doesn't say downloads or CD or hard drive in any way that would make them different from each other. But count four indicates, at least with respect to count four, that sets out, as your colleague indicated, Your Honor, sets out the hard drive or the CD. So the special... Right, but because counts two and three don't, how do we know that they're different? Because they focused on the dates of the downloads and the dates of the e-mails when those e-mails came in to Mr. Johnston. So those are the distinguishing features with respect to that. But it's not really. I mean, the count two focused on the downloaded videos. Count three was the e-mailed images and the images on the CD. Do you agree? My argument would be more that it was focused more on the images from the CD, but excuse me, more from the e-mails. But the CD could, since it was mailed, could also have met that standard. That's the problem. And then count four really encompasses, could be any one of those things. So how are we supposed to say that that was not error? Well, I think if we look at the case law and we look at Overton, you have different media in this case. And Overton, the holding in Overton suggests that... You haven't specified, though. And the references in the closing argument are weak, at best, to try to sort of specify what's what. And I just, again, am stunned, stunned as a former prosecutor how this could have happened, how you couldn't delineate exactly what corresponded to what day. And I wish, Your Honor, that I had a better answer for your question with respect to that. But the government's position is that the special verdict conforms with the dates for the downloads and then with the receipt of the e-mails. And that was sufficient in this case for the jury to conclude as they did. Well, it may be a teaching tool for special verdict forms. Perhaps, Your Honor. If the court... Notice I have about 3 minutes and 30 seconds left. I don't know if the court has any other issues that it would like to discuss with me, but I'm certainly prepared to submit on the remaining matters unless the court has anything specific. Thank you. It appears not. Thank you very much. Thank you, Your Honors. Your Honors, in rebuttal, I just have one point to make. That's going back to Count 1, which counsel spoke of the somewhat doubt as to the date of the date of those photographs on the CD. And the evidence is clear, however, in the testimony of the agent. The agent admitted that he had no evidence to suggest that the photos were not taken on the date in question, which was the October 13, 2005 date, 7 months preceding. So although the government tried to suggest that there was some doubt as to the date, and I think I'm responding to what Your Honors asked Mr. Coppola, I think the actual testimony is such that there's no reason to believe that it wasn't that date. The agent can't say it wasn't that date, either, and that's the only date that was before the jury, that October date. Thank you. Can I ask a different question? So on the issue of holding silence against your client, that wasn't objected to, so we review for plain error, do you agree? You would review for plain error, Your Honor, because it wasn't objected to how you That would be correct. That would be correct. And I think if I may, I don't want to speak out of turn because I'm in rebuttal, but if the Court has any particular questions about that argument, I'd be happy to address that. That was my only question. Okay. Very well. Thank you. Thank you. Thank both of you, counsel, this morning for your argument, United States v. Johnston as submitted. And we'll next hear argument in United States v. Mark. Thank you.    Thanks.
judges: McKeown, Murguia, Friedland